WILSON and Another *v.* RYBOLT.

A title deed is a personal chattel, but is so connected with, and essential to, the ownership of real estate, that it descends with it to the heir.

The possession of title deeds may be recovered in the action provided by the code for the recovery of personal chattels; and as the jurisdiction of justices of the peace, as to the character of the articles of property sought to be recovered, is equally extensive with that of the higher courts, title deeds may be recovered in an action of replevin in a justice's court.

APPEAL from the *Decatur* Common Pleas.

PERKINS, J.—Suit before a justice of the peace to recover possession of personal property, viz., a certain title deed to a lot of ground. Judgment for the plaintiff, on appeal to the Common Pleas. The first question is, whether a title deed can be recovered in this form of action.

A title deed is a personal chattel; but like the log chain of a saw mill, or certain other fixtures, it is so connected with, and essential to, the ownership of real estate, that it descends with it to the heir. Blackstone's Comm. Book 2, p. 427; *Hoskins* v. *Turrence*, 5 Blackf. 417.

From a very early period chancery compelled the delivery of title deeds where necessary. Blackstone's Comm., Shar's Ed., Book 3, p. 153, note. Later they became recoverable in an action of detinue. *Chitty*, in his work on Pleadings, (vol. 1, p. 122,) says, detinue "lies for the recovery of charters and title deeds," &c. See *Atkinson* v. *Baker*, 4 Term Rep. 430.

Now, what was the action of detinue? *Blackstone*, in his Commentaries, (Book 3, p. 151,) thus describes its incidents: "In order, therefore, to ground an action of detinue, which is only for the *detaining*, these points are necessary. 1. That the defendant came lawfully into possession of the goods, as either by delivery to him, or finding them. 2. That the plaintiff have a property. 3. That the goods themselves be of some value; and, 4. That they be ascertained in point of identity. Upon this the jury, if they find for the plaintiff, assess the several values of the parcels detained, and also damages for the detention; and the judgment is

conditional; that the plaintiff recover the said goods, or, (if they can not be had,) their respective values, and also the damages for detaining them?"

Such was the common law action of detinue; and as it was an action for the recovery of personal property only we must hold that whatever could be recovered by it was regarded, for the purposes of this civil remedy, as personal property. The action of replevin, at common law, was originally of a more limited character. It lay to recover back property illegally distrained; but it afterward came into use in all cases where personal property was illegally taken. The two actions of detinue, for unlawful detentions, and replevin for unlawful takings, thus came to cover the whole ground of unlawful deprivations of personal property, so far as recovering the specific articles was concerned. 1 Chit. Pl. 162, 164.

These two actions, viz., detinue, and replevin, in their fullest scope, were formerly in use in this State. Ind. Dig., p. 46, *et seq.;* see Will. on Per. Prop., top p. 49. And it will be seen at a glance, by inspecting the provision in the code for the recovery of personal property, that it covers the entire ground of both actions. That provision is, (§ 128,) "when any personal goods are wrongfully taken, or unlawfully detained," &c. The jurisdiction of justices of the peace, as to the character of articles of property, is equally extensive. 2 R. S., § 71, p. 464.

The conclusion irresistibly follows, that the possession of title deeds may be recovered in the action under the code for the recovery of personal chattels. If title deeds can not be recovered in this action, how can they be recovered at all? The possession of deeds of conveyance of real property is of much less consequence in this country than it formerly was in *England*, because of our recording acts. The public records of conveyances disclose to purchasers, in most cases, the true condition of the title to real estate. In *England*, before registration acts were passed, (and now, in the portions of it where they are not in force,) the possession of the complete chain of title deeds was the evidence which the seller produced of his ownership; and, on a sale, the entire

series of deeds passed to the purchaser, so that the seller should have no evidence of title remaining, whereby he might be able to effect a second and fraudulent sale. Hence, on a purchase of land in *England*, we discover a valid reason why an abstract of title, accompanied by the deeds constituting the links in the chain, should be furnished. Will. on Real Prop., side p. 370, *et. seq.*

But though the possession of deeds has become of less importance, the legal right to it is not probably changed; and even if it is as to prior deeds, it still remains as to the deed of the immediate grantor of the plaintiff.

The second question made in the case is, whether the evidence established a right in the plaintiff to the deed sued for. The bill of exceptions does not contain the words, "this was all the evidence given in the cause."

As the plaintiff recovered below, we must, in the absence of the evidence, presume in favor of the judgment.

*Per Curiam.*—The judgment is affirmed, with costs.

### DISSENTING OPINION.

HANNA, J.—I can not agree with the majority opinion.

This was an action commenced before a justice of the peace, for the recovery of a specific article of property named in the complaint, viz., a deed of conveyance of land. *Rybo't* was plaintiff, *Hanks* and one *Wilson* defendants. The plaintiff recovered before the justice, and also in the Common Pleas.

The first question is, whether an action in this form, to recover title deeds, can be maintained.

It is evident that this action was commenced under § 71 of the act in relation to the duties of justices of the peace, 2 R. S., p. 454: "Whenever any plaintiff shall, by complaint in writing verified by affidavit, set forth that his personal goods, not exceeding in value one hundred dollars, have been wrongfully taken, or are unlawfully detained, by any other person, specifically describing such property, and giving the value thereof," &c. This action is in the nature, and takes the place under the statute, of the old action of replevin;

and, indeed, is intended as a substitute for all the old forms of action for the recovery of specific articles of property, so far as the justice has jurisdiction. The justice's jurisdiction is statutory, and in this instance is derived from the statute quoted. Does the term "personal goods" include title deeds to lands? We have a statute, that words shall receive their ordinary signification, unless they have some particular legal, technical meaning. 2 R. S., p. 339. "Goods. 1. Movables; household furniture. 2. Personal or movable estate, as horses, cattle, utensils, &c. 3. Wares; merchandise; commodities bought and sold by merchants and traders." Webster's Dict. "Movables; wares; merchandise." Baily's Dict. "Movables in a house; wares; freights; merchandise." Walker's Dict. The ordinary, plain and usual sense of the words used in the statute would not, according to the above authorities, embrace title deeds.

We will next examine as to whether they have a technical import in law. "Goods; property. For some purposes this term includes money, valuable securities, and other mere personal effects." Bouvier's Law Dict., vol. 1, p. 387. *Blackstone* says, Bk. 2, p. 385, "But things personal, by our law, do not only include things movable, but also something more; the whole of which is comprehended under the general name 'chattels,' which Sir *Edward Coke* says is a French word signifying 'goods.'" From this text it is insisted that the term, "personal goods" has a legal technical meaning, and that that meaning would include title deeds, or the box in which they are kept, because such are sometimes embraced by the term "chattels." Bouvier's Law Dict., vol. 1, p. 224; 2 Kent's Comm. 342. But even that term is not, by some authors, made to include title deeds. Jacobs' Law Dict. vol. 1, p. 447. Nor are the two terms, by every author, treated as of like import. "Chattels is a more extensive term than goods or effects." Bouvier, pp. 224, 563. But whether title deeds are included in the general term "chattels," and whether the word "*goods*" and the word "*chattels*" are equivalent terms in law, it is not necessary to decide, for the reason that "there are many chattels which, though they be even of a movable nature, yet being necessarily attached

to the freehold, and contributing to its value or enjoyment, go along with it in the same path of descent or alienation. This is the case with the deeds and other papers which constitute the muniments of title to the inheritance." 2 Kent, 342; Blackstone, Book 2, p. 482, n. 7. See, also, 1 Bibb. 333; 3 Mass. 487; 5 *id.* 472. This must have been the view taken of the question by our law makers in framing our criminal statutes, at the same session of the Legislature at which the statute was enacted which governs this case; for, after framing a general section upon the subject of the larceny of "personal goods," (2 R. S., § 19, p. 403,) they then, (§ 24, p. 409,) proceed to frame another section, which declares that certain things shall be considered as "personal goods," of which larceny may be committed. Among the enumerated articles is, "any deed or writing containing a conveyance of land." Why the necessity of this latter section, if the deed or writing was already included in the former section, under the general term "personal goods"?

If the plaintiff, in the case at bar, had a right to the possession of the title deed in controversy, but before obtaining that possession had died, that right would have descended to the heir, and not to the personal representative; and although it would have been the duty of such representative to reduce to possession and administer the personal estate of the deceased, yet he could not have recovered the deed as a part of that personal estate.

Whether this action might, even in the form it is presented, have been originally commenced in a court having a general, and formerly a chancery, jurisdiction, we do not decide; but certainly the justice of the peace had no jurisdiction to grant the relief sought.

*Gavin* and *Coverdill*, for the appellants.
*Scobey* and *Cumback*, for the appellee.